## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 23-cv-22204-DPG

| | |
|---|---|
| CAROL COLE COMPANY, a California corporation d/b/a NUFACE,<br><br>Plaintiff,<br><br>vs.<br><br>AKIKA.COM LLC, a Florida limited liability company d/b/a MY DERMA DREAM; WOUTER AKIKA, an individual; ANTONIO DURANTE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | **FIRST AMENDED COMPLAINT FOR TRADE DRESS INFRINGEMENT, COUNTERFEITING, COPYRIGHT INFRINGEMENT, UNFAIR COMPETITIO FALSE ADVERTISING, VIOLATIONS OF RIGHTS OF PUBLICITY, AND CIVIL THEFT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Carol Cole Company d/b/a NuFACE ("**Plaintiff**" or "**NuFACE**") complains and alleges as follows against Defendants Akika.com LLC d/b/a My Derma Dream, Wouter Akika, Antonio Durante, and Does 1-10 (together, "**Defendants**"):

### NATURE OF THE CASE

1.      Plaintiff brings this action for injunctive relief and damages because Defendants have blatantly copied Plaintiff's distinctive registered product design trade dress and stolen both its advertising materials and founder's likeness to intentionally mislead, confuse, and deceive consumers into buying Defendants' knockoff product.

### PARTIES

2.      Plaintiff is a corporation duly organized and existing under the laws of the State of California with its principal place of business located in Vista, California.

3.      Plaintiff is informed and believes and based thereon alleges that Defendant Akika.com LLC is a limited liability company organized and existing under the laws of the State of Florida, doing business as My Derma Dream since 2022, with its principal place of business located in Miami, Florida.

4.      Plaintiff is also informed and believes and based thereon alleges that Defendant

Wouter Akika is founder, chief executive officer, and member of Defendant Akika.com LLC and is a resident of Miami, Florida.

5.      Plaintiff is further informed and believes and based thereon alleges that Defendant Antonio Durante is the manager of Defendant Akika.com LLC and is a resident of Mount Pleasant, South Carolina.

6.      Plaintiff is presently uninformed of the true names or capacities of the defendants sued herein under the fictitious names DOES 1-10, inclusive. Plaintiff is informed and believes, and thereupon alleges, that these Defendants fictitiously named as Doe engaged in, or are in some manner responsible for, the wrongful conduct and damages to Plaintiff alleged herein. Plaintiff therefore sues these Defendants by such fictitious names and will amend or seek leave to amend this pleading to substitute the true names and capacities of said Doe Defendants when they are ascertained.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over the claims in this action that relate to trade dress infringement, counterfeiting, copyright infringement, unfair competition, and false endorsement and advertising pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the claims in this Complaint that arise under state law pursuant to 28 U.S.C. § 1367, as those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.      The matter in controversy in this action also exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states and/or countries. Accordingly, this Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district; a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district; a substantial part of the property that is the subject of the action is situated in this district; and Defendants are subject to the Court's personal jurisdiction with respect to this action.

////

////

## PLAINTIFF AND ITS TRADE DRESS

10.     Plaintiff NuFACE is a well-known purveyor of microcurrent skincare devices and related beauty and skincare goods.

11.     NuFACE's flagship microcurrent facial toning devices, depicted in ***Figures 1 and 2***, help tone, firm, and reduce the look of wrinkles on the skin.

| ***Figure 1*** | ***Figure 2*** |
| :---: | :---: |
| *NuFACE® Mini Device* | *NuFACE® Trinity® Device* |

 

12.     Since its first microcurrent device debuted in 2004, NuFACE's business has grown considerably, and it is now a global company.  In the United States, its products are sold in retail stores such as Neiman Marcus, Nordstrom, Bloomingdale's, Bergdorf Goodman, Sephora and Ulta, among others.  Its products are also sold in spas, medical offices, and in online retail stores including its own online retail store located at www.nuface.com.

13.     With category defining products that work as intended and an authentic professional heritage, NuFACE has earned endorsements from skincare professionals, celebrities, social media influencers, and an ever-growing base of loyal and passionate customers.

14.     NuFACE's products have been prominently featured on The Today Show, Good Morning America, the Rachael Ray Show, Entertainment Tonight, CBS News, and in Forbes

Magazine, E! Online, HuffPost, People, Marie Claire, Town & Country Magazine, InStyle, New York Magazine, Allure, Harper's Bazaar, Vogue and countless other news and variety shows, magazines, and online periodicals.

15.    Famous celebrities have endorsed NuFACE's products, including Jennifer Aniston, Kate Hudson, Miranda Kerr, Molly Sims, Hailey Bieber, and Bella Hadid, among others.

16.    NuFACE's products have earned many awards and honors including QVC's "Q-Star Most Innovative Product of the Year," Cosmetic Executive Women's "Insider's Choice Beauty Award," Women's Health's "Best of Skincare Award," Allure's "Best of Beauty Award," Harper's Bazaar's "Anti-Aging Award," InStyle's "Best Beauty Buys Award," and New Beauty Magazine's award for "The Best At-Home Anti-Aging Device."

17.    NuFACE online video tutorials and third-party reviewers have millions of views and/or likes on YouTube, and hundreds of thousands of followers on social media including Facebook, Instagram, Twitter.

18.    In a sea of competition, Plaintiff's distinctively shaped NuFACE toning devices clearly stand out. Compare *Figures 1 and 2* above showing NuFACE's Mini and Trinity Devices with *Figure 3* below showing a sampling of competitive toning device designs that have substantially different shapes.

////

////

////

////

////

////

////

////

////

////

////

////

*Figure 3*

*Sampling of Competitive Facial Toning Device Designs*

| SolaWave | Foreo | ReFa |
|---|---|---|
| | | |
| Ziip | Therabody | Skin Gym |
| | | |
| Nutriskin | Lumina NRG | FaceGym |
| | | |

19.     NuFACE skin toning devices are so recognizable that Plaintiff has secured an incontestable federal trade dress registration for the product design. A copy of this registration, U.S. Reg. No. 4949193, registered on May 3, 2016 and protecting the product design when used in connection with "*Skin toning machines for cosmetic use*" in International Class 10 is attached hereto as <u>Exhibit A</u> and is incorporated herein by this reference. The trade dress registration and associated common law rights in the design shall hereinafter be referred to as the "**NuFACE Trade Dress**."

20.     As a result of Plaintiff's long usage and extensive promotion of its microcurrent devices, the NuFACE Trade Dress is well-known to and widely recognized by relevant customers and competitors, including Defendants. NuFACE has developed exclusive and valuable goodwill and strong federal and common law rights in the NuFACE Trade Dress as a result of its widespread and enduring usage, promotion, and success. Accordingly, the NuFACE Trade Dress is distinctive.

21.     The NuFACE Trade Dress is not functional. The product design features embodied by the NuFACE Trade Dress do not make the devices cheaper or easier to manufacture, do not affect the quality of the devices, and do not provide a utilitarian advantage to the customer as evidenced by the numerous commercially available alternative toning device designs depicted in *Figure 3* that look nothing like the NuFACE Trade Dress but were designed perform a similar function.

22.     Pursuant to the Lanham Act, Plaintiff's incontestable federal registration of the NuFACE Trade Dress is *conclusive evidence* of its validity, Plaintiff's ownership of, and exclusive right to use the NuFACE Trade Dress in connection with "skin toning machines for cosmetic use" nationwide. See 15 U.S.C. §§ 1065 and 1115. In addition, Plaintiff's federal registration serves as constructive notice of Plaintiff's ownership of the NuFACE Trade Dress to its competitors, including Defendants. See 15 U.S.C. § 1072.

////

////

////

////

////

6

## DEFENDANTS AND THEIR INFRINGING DEVICE

23.     In or around 2022, Defendants began offering the competing facial toning device depicted in *Figure 4* below and promoting the device across social media.

*Figure 4*

*My Derma Dream MicroSculpt Device*



24.     Defendants have blatantly copied Plaintiff's NuFACE Trade Dress to free ride on Plaintiff's success and established reputation.

25.     Although they look identical, Defendants' MicroSculpt Device (*see Figure 4*) retails for considerably less than Plaintiff's NuFACE's Trinity and Mini Devices (*see Figures 1 and 2*); is not FDA-cleared (*see* https://shop.mydermadream.com/pages/g002-microsculpt-ps13?_pos=1&_sid=811a0c14b&_ss=r ("*This product wasn't tested by FDA*")) like Plaintiff's Devices are (*see* https://www.mynuface.com/products/nuface-trinity ("*FDA-Cleared, Aesthetician-Created*"); and, on information and belief, produces a microcurrent that exceeds the that of Plaintiff's devices.  The higher level of microcurrent output by Defendant's device endangers consumers.

26.     A review of complaints filed by Defendants' customers with the Better Business Bureau further reveals that Defendants, upon information and belief, regularly do not respond to phone calls or return emails regarding product return requests and complaints (*see* https://www.bbb.org/us/fl/miami/profile/skin-care/my-derma-dream-0633-92026626/complaints)

leading to calls of "false representations," "being scammed" and "misled," "getting the runaround," "stealing," bogus "90 day money back guarantees," overpromises and under-deliverables, faulty device manufacturing, and warnings to fellow consumers to "RUN AWAY."

27.     Defendants' bad faith adoption and use of the NuFACE Trade Dress in the manner described above is likely to confuse and mislead customers as to whether some affiliation, connection, or association exists between Defendants and Plaintiff, or as to the origin, sponsorship, or approval of the parties' goods and/or services.

28.     Defendants' use of Plaintiff's NuFACE Trade Dress in the manner described above falsely designates the origin of the goods and/or services of Defendants, and falsely and misleadingly describes and represents material facts with respect to the products, services, websites, and/or commercial activities of Defendants.

29.     Defendants' use of the NuFACE Trade Dress in the manner described above enables Defendants to wrongfully trade on and receive the benefit of goodwill in the NuFACE Trade Dress, which Plaintiff has built up with considerable effort and expense over many years.

30.     Defendants' use of Plaintiff's NuFACE Trade Dress in the manner described above unjustly enriches Defendants at Plaintiff's expense.

31.     Defendants' use of Plaintiff's NuFACE Trade Dress in the manner described above, prevents Plaintiff from controlling the nature and quality of its products offered under that trade dress.

32.     Defendants' use of the same or substantially similar trade dress as Plaintiff's NuFACE Trade Dress is without the permission, license or authority of Plaintiff, and such use violates Plaintiff's federal and common law rights in and to the NuFACE Trade Dress.

33.     The activities of Defendants have caused irreparable injury to Plaintiff and to the public.  Unless enjoined by this Court, such acts will continue to cause irreparable injury to Plaintiff and to the public.  There is no adequate remedy at law for this injury.

**PLAINTIFF'S AND ITS CO-FOUNDER'S VIDEOS, IMAGE, AND LIKENESS**

34.     NuFACE was founded by Ms. Carol Cole and her daughters, Ms. Tera Peterson and Ms. Kim Morales, out of their home in Southern California.

35.     In the 1980s, Ms. Cole, a licensed aesthetician, developed a specialty in professionally administering microcurrent facials.

36.     At first, Ms. Cole offered her microcurrent facials exclusively inside the destination

spas where she worked in San Diego. Later, in response to her clients' demands, she began making house calls with her young daughters, Ms. Peterson and Ms. Morales in tow. Together, they traveled weekly to Los Angeles for more than a decade to offer professional microcurrent facials to Hollywood's rich and famous. A photograph of Ms. Cole from the 1980s treating a Hollywood starlet using an early microcurrent toning device is displayed in ***Figure 5***, below.

### *Figure 5*

*A Pioneer in Microcurrent Facials - Carol Cole Treating a Hollywood Starlet, 1980s*



37.     Following in her mother's footsteps, Ms. Peterson became a licensed aesthetician.

38.     Ms. Peterson now serves as Co-founder, Chief Creative Officer, and Chairman of Plaintiff, and is now widely recognized as the "face" of NuFACE. She has a global reputation as a health and beauty pioneer and successful entrepreneur. She regularly appears in NuFACE product tutorials, advertisements, promotions, and third-party news and other features discussing NuFACE products. Two photographs of Ms. Peterson are displayed below in ***Figure 6***.

*Figure 6*

*A Pioneer in Microcurrent Facial Toning Devices – Tera Peterson, 2020s*

 

39.     On May 11 and September 17, 2021, Ms. Peterson posted videos on Instagram and TikTok promoting the company's products bearing the NuFACE Trade Dress, screen captures of which are depicted in *Figure 7*, below.  Plaintiff is the owner of all right, title, and interest in these videos, including the copyrights and Ms. Peterson's related rights of likeness and publicity in the videos, to which Plaintiff was expressly assigned.

////

////

////

////

////

////

////

////

*Figure 7*

*Sampling of Screenshots of Plaintiff's Videos Featuring Tera Peterson*




40.    Plaintiff registered the videos depicted by screenshot in *Figure 7* with the U.S. Copyright Office on May 24, 2023 and subsequently received Certificates of Registration for each video (Copyright Registration Nos. PA 2-413-156 and PA 2-413-164), collectively hereinafter referred to as the "**Peterson Registrations**."

**DEFENDANTS' UNAUTHORIZED USES OF PLAINTIFF'S AND ITS**

**CO-FOUNDER'S VIDEOS AND IMAGE AND LIKENESS**

41.    Unsatisfied with their misappropriation of Plaintiff's NuFACE Trade Dress alone, Defendants founded their competing company by unlawfully using portions of the copyrighted videos depicted in the Peterson Registrations and her image, likeness and persona without her approval or consent. They used these videos, *one of which actually features Tera using a NuFACE device bearing the NuFACE Trade Dress*, to promote Defendants' infringing MicroSculpt Device via their social media accounts and other third-party sites. *See, e.g.*, *Figure 8* below showing a sampling of said unlawful uses.

////

////

////

11



*Figure 8*

*Sampling of Screenshots of Defendants' Copycat Videos Featuring Tera Peterson*




42.     Plaintiff never granted Defendants any right to use these videos or Ms. Peterson's image, likeness, or persona in any way.

43.     Ms. Peterson's image, likeness, and persona have substantial economic value when used for the purpose of advertising, marketing, promoting, or endorsing Plaintiff's products. That valuable property right has been misappropriated through Defendants' unauthorized distribution and reposting/resharing of the videos depicted in the Peterson Registrations and her image, likeness, and persona and has caused dilution of the value of same.

## DEFENDANTS' ADDITIONAL UNAUTHORIZED USES OF PLAINTIFF'S COPYRIGHTED PROMOTIONAL VIDEOS

44.     In addition to misappropriating Plaintiff's NuFACE Trade Dress and wrongfully using its co-founder's likeness, Defendants have also coopted photos and videos of models and influencers that Plaintiff commissioned to peddle its infringing MicroSculpt Device—*videos*

*which, again, feature Plaintiff's actual NuFACE devices.*

45.     On July 16, 2021 and in March 2022, Plaintiff caused to be published the model and influencer videos on TikTok and elsewhere, screenshots from which are depicted in ***Figure 9***, below. Plaintiff is the owner of all right, title, and interest in these videos, including the copyrights associated therewith.

***Figure 9***

*Sampling of Plaintiff's Other Promotional Videos*

  

46.     Plaintiff registered the videos depicted in ***Figure 9*** with the U.S. Copyright Office on May 24, 2023 and subsequently received Certificates of Registration for each video (Copyright Registration Nos. PA 2-413-160, PA 2-413-167 and PA 2-413-158), collectively hereinafter referred to as the "**Additional Registrations**."

47.     Defendants unlawfully replicated and redistributed portions of these Additional Registrations on their social media accounts and other third-party sites. *See, e.g.*, ***Figure 10*** below showing a sampling of said unlawful uses.

////

////

////

////

13

*Figure 10*

*Sampling of Defendants' Other Copycat Videos*

 



48.    Plaintiff has maintained strict control of these copyrighted videos and has never granted Defendants any rights to use these videos in any way.

## FIRST CLAIM FOR RELIEF

### FEDERAL TRADEMARK INFRINGEMENT

### (15 U.S.C. § 1114(1))

49.     Plaintiff incorporates paragraphs 1-33, 41, and 44 as though fully set forth herein.

50.     The acts of Defendants described above constitute infringement of Plaintiff's federally registered NuFACE Trade Dress in violation of 15 U.S.C. § 1114(1).

51.     Plaintiff's NuFACE Trade Dress is non-functional and serves to designate the origin of Plaintiff's NuFACE facial toning devices.

52.     As a result of the widespread use and promotion of Plaintiff's NuFACE Trade Dress and its incontestable federal registration, the NuFACE Trade Dress is distinctive, or in the alternative, has acquired distinctiveness and secondary meaning in the minds of consumers. Consumers have come to associate the NuFACE Trade Dress exclusively with Plaintiff.

53.     Long after Plaintiff's use and adoption of the NuFACE Trade Dress, Defendants began manufacturing, packaging, importing, offering for sale, and/or selling facial toning devices that use trade dress that is confusingly similar to Plaintiff's NuFACE Trade Dress as shown below.

| *Genuine NuFACE Toning Device* | *Infringing My Derma Dream Infringing Device* |
|---|---|
|  |  |

54.     Defendants have infringed Plaintiff's NuFACE Trade Dress rights with the intent to trade upon Plaintiff's reputation and goodwill by causing confusion and mistake among

customers and the public, and to deceive the public into believing that Defendants' products are associated with, sponsored by, originated from, or are approved by Plaintiff, when they are not, resulting in a loss of reputation in, and mischaracterization of, Plaintiff's products and its brand.

55.     Defendants' activities constitute willful and intentional infringement of Plaintiff's NuFACE Trade Dress rights in total disregard of Plaintiff's proprietary rights and were done despite Defendants' knowledge that use of the NuFACE Trade Dress was and is in direct contravention of Plaintiff's rights.

56.     For the reasons set forth above, this is an exceptional case within the meaning of 15 U.S.C. § 1117 entitling Plaintiff to an award of its reasonable attorneys' fees of not less than $275,000, its damages of not less than $750,000, and those damages should be trebled, and Defendants' profits of not less than $750,000 subject to proof at trial.

57.     Defendants' acts of trade dress infringement have irreparably harmed Plaintiff and the general public and such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

<u>SECOND CLAIM FOR RELIEF</u>

**TRADEMARK COUNTERFEITING**

**(15 U.S.C. § 1114)**

58.     Plaintiff incorporates paragraphs 1-33, 41, 44, and 49-57 as though fully set forth herein.

59.     The acts of Defendants described above constitute trademark counterfeiting arising under 15 U.S.C. § 1114.

60.     Plaintiff's NuFACE Trade Dress is non-functional and serves to designate the origin of Plaintiff's NuFACE facial toning devices.

61.     As a result of the widespread use and promotion of Plaintiff's NuFACE Trade Dress and its incontestable federal registration, the NuFACE Trade Dress is distinctive, or in the alternative, has acquired distinctiveness and secondary meaning in the minds of consumers. Consumers have come to associate the NuFACE Trade Dress exclusively with Plaintiff.

62.     Without Plaintiff's consent, Defendants have used in commerce trade dress that is identical to, or substantially indistinguishable from the NuFACE Trade Dress in connection with the manufacturing, distributing, selling, offering for sale, advertising and/or promoting of

Defendants' MicroSculpt Device. Such use is likely to cause confusion, or to cause mistake, or to deceive.

63.     Plaintiff is informed and believes and based thereon alleges that Defendants have used the NuFACE Trade Dress in connection with the MicroSculpt Device knowing of their counterfeit nature. The activities of Defendants complained of herein constitute willful and intentional trademark counterfeiting, and Defendants undertook these activities with the intent to unfairly compete against Plaintiff, to trade upon Plaintiff's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' MicroSculpt Device is associated with, sponsored by, originated from, or are approved by Plaintiff, when in truth and fact they are not.

64.     Plaintiff is informed and believes and based thereon alleges that Defendants had actual knowledge of Plaintiff's ownership and prior use of the NuFACE Trade Dress and related federal registration and, without the consent of Plaintiff, have willfully and intentionally violated 15 U.S.C. § 1114.

65.     For the reasons set forth above, this is an exceptional case within the meaning of 15 U.S.C. § 1117 entitling Plaintiff to an award of its reasonable attorneys' fees of not less than $275,000, its damages of not less than $750,000, and those damages should be trebled, statutory damages of not less than $2,000,000, and Defendants' profits of not less than $750,000 subject to proof at trial.

66.     Defendants' acts of trade dress infringement have irreparably harmed Plaintiff and the general public and such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION & FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

67.     Plaintiff incorporates paragraphs 1-33, 41, 44, and 49-66 as though fully set forth herein.

68.     The acts of Defendants described above constitute unfair competition and false designation of origin in violation of Plaintiff's common law rights in the NuFACE Trade Dress pursuant to 15 U.S.C. § 1125(a).

69.     Without Plaintiff's consent, Defendants have unfairly competed and created and will create a false designation of origin by using, in commerce, Plaintiff's NuFACE Trade Dress and/or other designations that are substantially identical or confusingly similar to the NuFACE Trade Dress, in connection with the advertising, offering for sale, distributing and/or sale of Defendants' MicroSculpt Device, thereby causing a likelihood of confusion, mistake or deception as to an affiliation, connection or association with Plaintiff doing business as NuFACE or to suggest Plaintiff as the origin of Defendants' MicroSculpt Device or that Plaintiff has sponsored or approved Defendants' MicroSculpt Device or commercial activities, when in truth and fact they are not sponsored or approved by Plaintiff.

70.     Plaintiff is informed, believes, and on that basis alleges, that Defendants did so with the intent to trade upon Plaintiff's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' MicroSculpt Device is associated with, sponsored by or approved by Plaintiff, when in truth and fact it is not.

71.     Plaintiff's NuFACE Trade Dress is used in commerce, is non-functional, distinctive, or in the alternative, has acquired distinctiveness and secondary meaning in the marketplace.

72.     Defendants' activities constitute willful and intentional unfair competition and false designation of origin of Plaintiff's common law NuFACE Trade Dress rights in total disregard and direct contravention of said rights.

73.     For the reasons set forth above, this is an exceptional case within the meaning of 15 U.S.C. § 1117 entitling Plaintiff to an award of its reasonable attorneys' fees of not less than $275,000, its damages of not less than $750,000, and those damages should be trebled, and Defendants' profits of not less than $750,000 subject to proof at trial.

74.     Defendants' acts of unfair competition and false designation of origin have irreparably harmed Plaintiff and the general public and such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

////

////

////

### FOURTH CLAIM FOR RELIEF

### FALSE ENDORSEMENT, FALSE ADVERTISING & UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

75.     Plaintiff incorporates paragraphs 1-17, 23-26, and 34-43 as though fully set forth herein.

76.     Plaintiff is, by written and valid assignment, the owner of the statutory and common law rights associated with Ms. Tera Peterson's image, likeness, and persona in the videos depicted in the Peterson Registrations, including her right to decide whether to associate that image, likeness, and persona with any third party for purposes relating to sponsorship and/or endorsement.

77.     Defendants used Ms. Peterson's image, likeness, and persona without permission by posting, reposting, and/or sharing on their websites, social media accounts, and/or through third party sites and stores, the videos depicted in the Peterson Registrations, or derivative versions thereof, to promote Defendant Akika.com LLC doing business as My Derma Dream, and specifically to promote their infringing MicroSculpt Device.

78.     The acts of Defendants described above constitute false or misleading representations of fact and falsely imply the endorsement of Defendants' business and product by Ms. Peterson.  The acts of Defendants are specifically designed to deceive consumers.

79.     Defendants' unauthorized uses of Ms. Peterson's image, likeness, and persona are likely to confuse and deceive consumers as to her sponsorship, endorsement and/or approval of Defendants and their products. Specifically, Defendants' uses of Ms. Peterson's image, likeness, and persona is likely to cause confuse consumers to mistakenly believe that Ms. Peterson is associated with Defendant Akika.com LLC doing business as My Derma Dream, or that she sponsors, endorses, or approves of Defendants' products including their infringing MicroSculpt Device.

80.     Defendants' wrongful acts have misled and confused consumers, and continue to mislead and confuse consumers, by, among other things, willfully and intentionally creating a false impression that Defendants' products are, or were, sponsored, endorsed, approved, affiliated, or associated with Ms. Peterson.

81.     As a direct and proximate result of the acts of false endorsement and unfair competition set forth above, Plaintiff has suffered actual damages in an amount to be proven at trial, but in no event less than $1 million. Plaintiff is entitled to the full range of relief available

under the Lanham Act, 15 U.S.C. § 1117, including, without limitation, an award of actual damages and the disgorgement of Defendants' profits of not less than $1 million, subject to proof at trial, arising from their false, misleading, or unfair acts. Defendants' conduct further renders this an "exceptional" case within the meaning of the Lanham Act, thus entitling Plaintiff to an award of attorneys' fees and costs of not less than $275,000 subject to proof at trial.

82.    Defendants' acts of unfair competition and false endorsement have irreparably harmed Plaintiff and the general public and such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

<u>**FIFTH CLAIM FOR RELIEF**</u>

**COPYRIGHT INFRINGEMENT**

**(17 U.S.C. § 501(a))**

83.    Plaintiff incorporates paragraphs 1-9, 34-42, and 44-48 as though fully set forth herein.

84.    Plaintiff is the owner of the videos embodied in the valid, enforceable Peterson Registrations and Additional Registrations, each of which contains copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.*

85.    Plaintiff has the exclusive rights to reproduce, distribute, display, perform, prepare derivative works of, and use the videos embodied in the Peterson Registrations and Additional Registrations.

86.    Plaintiff is informed and believes and based thereon alleges that Defendants have actual notice of Plaintiff's rights in and to the videos embodied in the Peterson Registrations and Additional Registrations as well as those Registrations themselves.

87.    Defendants failed to obtain Plaintiff's consent or authorization to use, reproduce, copy, display, distribute, prepare derivative works of, sell and/or market the videos embodied in the Peterson Registrations and Additional Registrations.

88.    Defendants, without permission, knowingly and intentionally reproduced, copied, displayed, distributed, prepared derivative works of, sold and/or marketed the videos embodied in the Peterson Registrations and Additional Registrations, by, at a minimum, using those videos, or derivative versions thereof, on their website, social media, and/or through third party sites and stores, to promote Defendant Akika.com LLC doing business as My Derma Dream and its

20

infringing MicroSculpt Device.

89.     Defendants' unlawful and willful actions constitute infringement of the videos embodied in the valid, enforceable Peterson Registrations and Additional Registrations in violation 17 U.S.C. § 501(a).

90.     Defendants' knowing and intentional copyright infringement of the videos embodied in the Peterson Registrations and Additional Registrations has caused substantial and irreparable harm to Plaintiff and, unless enjoined, Defendants will continue to cause substantial and irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

91.     Plaintiff is therefore entitled to injunctive relief under 17 U.S.C. § 502, its actual damages of not less than $250,000, and Defendants' profits of not less than $250,000 subject to proof at trial.

## SIXTH CLAIM FOR RELIEF

### CALIFORNIA STATUTORY & COMMON LAW UNFAIR COMPETITION

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

92.     Plaintiff incorporates paragraphs 1-45, 47, and 49-82 as though fully set forth herein.

93.     The acts and practices of Defendants as set forth above constitute unfair, unlawful, wrongful, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200 and the common law of California.

94.     Plaintiff is informed and believes and based thereon alleges that Defendants' acts as set forth herein have been committed and are being committed with the deliberate purpose and intent of trading on Plaintiff doing business as NuFACE's goodwill and reputation, and thereby unfairly competing with Plaintiff.

95.     As a direct and proximate result of Defendants' unfair business practices, as set forth herein, Plaintiffs have lost money or property, and have suffered, and will continue to suffer, injury in fact in an amount to be proven at trial, but in no event less than $1 million.

96.     Plaintiff seeks restitution of all amounts wrongfully obtained by Defendants as a result of the aforementioned conduct in an amount to be proven at trial, but in no event less than $1 million.

97.     Defendants have irreparably injured Plaintiff. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violating

Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**FLORIDA STATUTORY DECEPTIVE & UNFAIR TRADE PRACTICES**

**(Fla. Stat. § 501.204)**

98.    Plaintiff incorporates paragraphs 1-45, 47, 49-82, and 92-97 as though fully set forth herein.

99.    The acts and practices of Defendants as set forth above constitute unfair competition and unconscionable, unlawful, unfair and deceptive acts or practices in violation of Fla. Stat. § 501.204.

100.    Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

101.    Defendants' conduct described above was misleading, wrongful, willful, and malicious.

102.    Plaintiff is informed and believes and based thereon alleges that Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiff of its property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiff. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Plaintiff's rights.

103.    As a direct and proximate result of Defendants' deceptive and unfair business practices, as set forth herein, Plaintiffs have lost money or property, and have suffered, and will continue to suffer, injury in fact in an amount to be proven at trial, but in no event less than $1 million.

104.    Plaintiff seeks restitution of all amounts wrongfully obtained by Defendants as a result of the aforementioned conduct in an amount to be proven at trial, but in no event less than $1 million, together with Plaintiff's attorneys' fees and costs in an amount of not less $275,000 subject to proof at trial.

105.    Defendants have irreparably injured Plaintiff. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violating Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF

### CALIFORNIA STATUTORY FALSE ADVERTSING

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

106.    Plaintiff incorporates paragraphs 1-17, 23-26, 34-45, 47, and 75-82 as though fully set forth herein.

107.    The acts and practices of Defendants as set forth above constitute false advertising in violation of Cal. Bus. & Prof. Code § 17500.

108.    Defendants' advertising was and is untrue or misleading and likely to deceive the public because, among other things, it falsely implies the endorsement of Defendants' business and its infringing MicroSculpt Device.

109.    Defendants knew, or by reason of reasonable care should have known, that their advertising was and is untrue or misleading and so acted in violation of Cal. Bus. & Prof. Code § 17500.

110.    As a direct and proximate result of Defendants' false advertising, as set forth herein, Plaintiffs have lost money or property, and have suffered, and will continue to suffer, injury in fact in an amount to be proven at trial, but in no event less than $1 million.

111.    Plaintiff seeks restitution of all amounts wrongfully obtained by Defendants as a result of the aforementioned conduct.

112.    Defendants have irreparably injured Plaintiff. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violating Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## NINTH CLAIM FOR RELIEF

### FLORIDA CIVIL THEFT

### (Fla. Stats. §§ 772.11 and 812.014)

113.    Plaintiff incorporates paragraphs 1-17, 23-26, 34-43, and 75-82 as though fully set forth herein.

114.    The acts and practices of Defendants as set forth above constitute civil theft of Plaintiff's tangible and intangible personal property, including rights, privileges, interests and claims in violation of Section § 772.11, Florida Statutes.

115.    Defendants knowingly appropriated, altered, used and disseminated Ms. Tera Peterson's image, likeness, and persona in the videos in the Peterson Registrations, which rights

were validly assigned to Plaintiff, without authorization or consent.

116.    Defendants' misappropriation of Ms. Peterson's image, likeness, and persona was for Defendants' own use and benefit and to deprive Plaintiff of certain rights.

117.    Defendants' misconduct denied Plaintiff the right to engage in arms-length negotiations over the use and dissemination of Ms. Peterson's image, likeness and persona and the right to refuse the proposed use by Defendants and the right to otherwise protect Ms. Peterson's image, likeness and personal from harm at the hands of Defendants.

118.    Defendants' wrongful conduct as detailed herein was willful and malicious.

119.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiff of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiff. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Plaintiff's rights.

120.    Defendants' appropriation and use of Ms. Peterson's image, likeness and persona without authority directly and proximately caused damage to Plaintiff and unjustly enriched Defendants in an amount to be determined at trial, but in no event less than $1 million. Those damages should trebled or, at a minimum, punitive damages should be awarded in an amount equal to at least twice Plaintiff's actual damages, together with Plaintiff's attorneys' fees and costs in an amount of not less $275,000 subject to proof at trial.

121.    Defendants' violations have irreparably harmed Plaintiff and such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## TENTH CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA STATUTORY RIGHT OF PUBLICITY
### (Cal. Civ. Code § 3344)

122.    Plaintiff incorporates paragraphs 1-17, 23-26, 34-43, 75-82, and 113-121 as though fully set forth herein.

123.    Plaintiff is, by written and valid assignment, the owner of the rights of publicity associated with Ms. Peterson's image, likeness and persona in the videos depicted in the Peterson Registrations.

124.    Defendants have willfully and without authorization used Ms. Peterson's image,

likeness, and persona for commercial purposes by posting onto their website, social media, and/or through third party sites and stores, videos depicted in the Peterson Registrations, or derivative versions thereof, to promote Defendant Akika.com LLC doing business as My Derma Dream, and specifically to promote their infringing MicroSculpt Device.

125.   Defendants' unauthorized uses of Ms. Peterson's image, likeness, and persona constitute a commercial misappropriation in violation of Section 3344 of the California Civil Code.

126.   As a direct and proximate result of Defendants' malicious, oppressive, fraudulent and wrongful conduct, Plaintiff has suffered actual damages in an amount to be proven at trial, but in no event less than $1 million. Those damages should trebled or, at a minimum, punitive and exemplary damages should be awarded in an amount equal to at least twice Plaintiff's actual damages to sufficiently punish and deter Defendants and others from engaging in such acts in the future.

127.   Defendants have further been unjustly enriched by their misappropriation of Plaintiff's rights. Accordingly, Plaintiff is entitled to restitution of all income, profits, and other benefits resulting from Defendants' unlawful conduct, in an amount to be determined according to proof at trial, but in no event less than $1 million.

128.   Defendants' violations have irreparably harmed Plaintiff and such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## ELEVENTH CLAIM FOR RELIEF

## UNAUTHORIZED MISAPPROPRIATION OF LIKENESS & RIGHT OF PUBLICITY
### (Fla. Stat. § 540.08)

129.   Plaintiff incorporates paragraphs 1-17, 23-26, 34-43, 75-82, and 113-128 as though fully set forth herein.

130.   Plaintiff is, by written and valid assignment, the owner of the rights of publicity associated with Ms. Peterson's image, likeness, and persona in the videos depicted in the Peterson Registrations.

131.   The acts and practices of Defendants as set forth above constitute misappropriation of Plaintiff's and Ms. Peterson's statutory right of publicity in violation of Section § 540.08, Florida Statutes.

132.   Defendants knowingly published, printed, displayed or otherwise publicly used for

commercial and advertising purposes Ms. Peterson's image, likeness and persona in the videos in the Peterson Registrations, without authorization or consent, and for Defendants' own benefit.

133.    Defendants' wrongful conduct as detailed herein was willful and malicious.

134.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiff of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiff. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Plaintiff's rights.

135.    Defendants' appropriation and use of Ms. Peterson's image, likeness and persona without authority directly and proximately caused damage to Plaintiff and unjustly enriched Defendants in an amount to be determined at trial, but in no event less than $1 million. Punitive damages should be awarded in an amount equal to at least twice Plaintiff's actual damages, together with Plaintiff's attorneys' fees and costs in an amount of not less $275,000 subject to proof at trial.

136.    Defendants' violations have irreparably harmed Plaintiff and such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

**TWELFTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA COMMON LAW RIGHT OF PUBLICITY**

137.    Plaintiff incorporates paragraphs 1-17, 23-26, 34-43, 75-82, and 113-136 as though fully set forth herein.

138.    Plaintiff is, by written and valid assignment, the owner of the common law rights of publicity associated with Ms. Peterson's image, likeness, and persona in the videos depicted in the Peterson Registrations.

139.    Defendants have willfully and without authorization used Ms. Peterson's image, likeness, and persona for commercial purposes by posting onto their website, social media, and/or through third party sites and stores, videos depicted in the Peterson Registrations, or derivative versions thereof, to promote Defendant Akika.com LLC doing business as My Derma Dream, and specifically to promote their infringing MicroSculpt Device.

140.    Defendants' unauthorized uses of Ms. Peterson's image, likeness, and persona constitute a commercial misappropriation in violation of California's common law right of

publicity.

141.    As a direct and proximate result of Defendants' malicious, oppressive, fraudulent and wrongful conduct, Plaintiff has suffered actual damages in an amount to be proven at trial, but in no event less than $1 million. Those damages should trebled or, at a minimum, punitive and exemplary damages should be awarded in an amount equal to at least twice Plaintiff's actual damages to sufficiently punish and deter Defendants and others from engaging in such acts in the future.

142.    Defendants have further been unjustly enriched by their misappropriation of Plaintiff's rights. Accordingly, Plaintiff is entitled to restitution of all income, profits, and other benefits resulting from Defendants' unlawful conduct, in an amount to be determined according to proof at trial, but in no event less than $1 million.

143.    Defendants' violations have irreparably harmed Plaintiff and such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

<u>**THIRTEENTH CLAIM FOR RELIEF**</u>

**UNAUTHORIZED MISAPPROPRIATION OF LIKENESS &RIGHT OF PUBLICITY UNDER FLORIDA COMMON LAW**

144.    Plaintiff incorporates paragraphs 1-17, 23-26, 34-43, 75-82, and 113-143 as though fully set forth herein.

145.    Plaintiff is, by written and valid assignment, the owner of the rights of publicity associated with Ms. Peterson's image, likeness and persona in the videos depicted in the Peterson Registrations.

146.    The acts and practices of Defendants as set forth above constitute misappropriation of Plaintiff's and Ms. Peterson's statutory right of publicity in violation of Florida common law.

147.    Defendants knowingly published, printed, displayed or otherwise publicly used for commercial and advertising purposes Tera's image, likeness and persona in the videos in the Peterson Registrations, without authorization or consent, and for Defendants' own benefit.

148.    Defendants' wrongful conduct as detailed herein was willful and malicious.

149.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiff of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiff.

At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Plaintiff's rights.

150.     Defendants' appropriation and use of Ms. Peterson's image, likeness and persona without authority directly and proximately caused damage to Plaintiff and unjustly enriched Defendants in an amount to be determined at trial, but in no event less than $1 million. Punitive damages should be awarded in an amount equal to at least twice Plaintiff's actual damages, together with Plaintiff's attorneys' fees and costs in an amount of not less $275,000 subject to proof at trial.

151.     Defendants' violations have irreparably harmed Plaintiff and such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of judgment against Defendants as follows:

1.     For an award of actual, compensatory, treble, and statutory damages in an amount to be proven, but in no event less than $3,750,000;

2.     For the disgorgement of Defendants' profits;

3.     For restitution of all income, profits, and other benefits resulting from Defendants' unlawful conduct;

4.     For an award of punitive and exemplary damages in an amount sufficient to deter unlawful conduct by Defendants in the future;

5.     For a preliminary and permanent injunction restraining and enjoining Defendants, their parents, subsidiaries, directors, officers, members, managers, agents, servants, employees, attorneys, and all those in active concert or participation with them  from producing, selling, offering for sale, distributing, advertising, promoting or using the NuFACE Trade Dress, and any confusingly similar variation thereof, and the videos embodied in the Peterson Registrations and Additional Registrations, and any derivations thereof, and Ms. Tera Peterson's image, likeness, and persona without Plaintiffs' consent, including on Defendants' products, website, social media and/or through third party sites and stores or otherwise;

6.     Consistent with prayer 5 above, Defendants be required to deliver to the Court for destruction, or show proof of destruction of, any and all products, samples, labels, prints, advertisements, marketing or promotional materials, signage, banners, pamphlets, leaflets, flyers,

packages, wrappers, catalogs, internet web pages, and any other materials in its possession or control bearing the NuFACE Trade Dress, or any confusingly similar variation thereof, or the videos embodied in the Peterson Registrations and Additional Registrations, or any derivations thereof, or Ms. Peterson's image, likeness, or persona;

7.      Consistent with paragraphs 5 and 6 above, Defendants be ordered to file with this Court and to serve upon Plaintiff within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with this injunction;

8.      For pre-judgment and post-judgment interest according to proof and to the maximum extent allowed by law;

9.      For attorneys' fees and costs; and

10.     For such other and further relief as the Court may deem just and proper.


Date: June 16, 2023                      Respectfully submitted,


                                         */Alexis Read/*_____

                                         Alexis Read
                                         FL Bar No. 98084
                                         Read Law PLLC
                                         25 SE Second Ave, 8th Fl.
                                         Miami, FL 33131
                                         Phone: (305) 209-2131
                                         Email: asr@alexisreadlaw.com

                                         Joshua Richman
                                         CA Bar No. 243147 (admitted *pro hac vice*)
                                         Michael Lane
                                         CA Bar No. 248624 (admitted *pro hac vice*)
                                         Lewis Kohn & Walker, LLP
                                         17085 Via Del Campo
                                         San Diego, CA 92127
                                         Phone: (858) 436-1330
                                         Email: jrichman@lewiskohn.com; mlane@lewiskohn.com

                                         Attorneys for Plaintiff, Carol Cole Company

## DEMAND FOR JURY TRIAL

Carol Cole Company hereby demands trial by jury.

Date: June 16, 2023                    Respectfully submitted,


                                       */Alexis Read/*

                                       Alexis Read
                                       FL Bar No. 98084
                                       Read Law PLLC
                                       25 SE Second Ave, 8th Fl.
                                       Miami, FL 33131
                                       Phone: (305) 209-2131
                                       Email: asr@alexisreadlaw.com

                                       Joshua Richman
                                       CA Bar No. 243147 (*pro hac vice admission pending*)
                                       Michael Lane
                                       CA Bar No. 248624 (*pro hac vice admission pending*)
                                       Lewis Kohn & Walker, LLP
                                       17085 Via Del Campo
                                       San Diego, CA 92127
                                       Phone: (858) 436-1330
                                       Email: jrichman@lewiskohn.com; mlane@lewiskohn.com

                                       Attorneys for Plaintiff, Carol Cole Company